UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

———————————————————————X

DUNG NGUYEN and NGOC-ANH VU,

          Plaintiff(s),                    Case No.: 1:16-cv-01351

-against-

MORRISON HEALTHCARE,

          Defendant(s).

———————————————————————X


## **PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**


Glen Devora, Esq.
D'AGOSTINO & ASSOCIATES PC
3309 Richmond Avenue
Staten Island, New York 10312
T: 718 – 967-1600
F: 718-967-8677
Email: Gdevora@daglawteam.com

# TABLE OF CONTENTS

Table of Authorities................................................................................................................3

Introduction............................................................................................................................4

Statement of Facts..................................................................................................................4

Legal Argument.......................................................................................................................9

     I.    DEFENDANT MORRISON DID OWE A DUTY TO PLAINTIFF AS DEFEDNANT WAS NOT MERELY AN OUTSIDE CONTRACTOR ... 9

     II.   DEFENDANT MORRISON LAUNCH AN INSTURMENT OF HARM AND CREATED THE DANGEOROUS CONDITION.......................11

     III.  DEFENDANT MORRISON'S CONTRACT ENTIRELY DISPLACED STATEN ISLAND HOSPITAL'S RESPONSIBILITIES............................14

Conclusion.............................................................................................................................15

## TABLE OF AUTHORITIES

Donna vs. One Source Holdings, Inc., 680 F.Supp.2d 394 (E.D.N.Y. 2010).......................9

Derezeas v. Glover, 121 A.D.3d 523 (1st Dept 2014)...............................................10

Dunleavy v. Tuttle, 83 A.D.3d 995 (2nd Dept 2011)................................................11

Espinal v. Melville Snow Contractors, Inc., 773 N.E.2d 485 (NY Ct. App 2002). ..............14

Harris v. Lanai House Inc, 111 A.D.3d 603 (2nd Dept 2013).......................................12

Hores v. Sargent, 230 A.D.2d 712 (2nd Dept 1996)................................................10

Katz v. United Synagogue of Conservative Judaism,135 A.D.3d 458,23 N.Y.S.3d 183(1stDept2016). ...................................................................................10

Minott v. City of New York, 230 A.D.2d 719, 720 (2nd Dept 1996). .............................. 9

Mosca v. OCE Holding Inc., 71 A.D.3d 1103 (2nd Dept 2010)......................................11

Petry v. Hudson Valley Pavement, Inc., 78 A.D.3d 1145 (2nd Dept 2010),.......................11

Santos v. Deanco Serv Inc., 35 N.Y.S.3d 686 (2nd Dept 2016)..................................... 9

## INTRODUCTION

This case stems from an incident that occurred on June 26, 2014. Plaintiff was employed by Staten Island University Hospital (hereinafter referred to as "SIU"). Plaintiff tripped and fell while working when his foot became entangled in an electrical cord that was hanging down from a table.

Plaintiff and multiple non party witnesses testified that Defendant Morrison was aware of the dangerous condition. They also testified that Defendant Morrison created the condition when Defendant Morrison first took over the management of the cafeteria.

Defendant Morrison was hired by SIU years before this accident to manage the cafeteria as well as the SIU employees within the cafeteria. Defendant Morrison employed 24 workers to work in the hospital alongside and manage the SIU employees.

Defendant Morrison now moves for summary judgment asserting that it did not owe the plaintiff a duty. As is discussed in Plaintiff's memorandum of law, Defendant Morrison owed plaintiff a duty as it undoubtedly used, occupied and controlled the premises. Furthermore, Defendant Morrison created the condition that caused Plaintiff's accident.

## STATEMENT OF FACTS

Testimony of Plaintiff

On the day of the accident plaintiff was an employee of Staten Island University Hospital. He had been working there since 2002. (pg 8:4-8) On the day of the accident, Plaintiff was checking the food to see if he need to refill any of the hot boxes at his station when his feet became entangled by the electrical wiring of the hot boxes. (pg 37:22-25, 38:2-10). The electrical cord came from the hot boxes plaintiff was working with and they would get plugged into an outlet. (pg 40:7-12)

Plaintiff testified that Defendant Morrison changed the initial configuration of the electrical cord, rather than running the cord alongside the table, they plugged the cord in near the floor which

4

caused the wires to hang on the ground. (pg, 49:5-15, 50:8-14, 52:11-20) Plaintiff had complained to Defendant Morrison about the dangerous condition, but nothing was done to correct the problem. (pg 48:17-25, 49:5-15)

Testimony of Paul Testeverde (Defendant Morrison)

Paul Testaverde was employed by Defendant Morrison as a retail manager (See Testeverde transcript annexed hereto as exhibit "3", page 6)  He oversaw the cafeteria where this incident happened. (8) He testified that SIU hospital employees work in the cafeteria alongside the Morrison managers. (20) The Morrison managers supervise the work and he testified that "as a team we [Morrison] are all responsible for the operation of the entire food service" (21)   "All the managers are responsible for the management of the cafeteria" (21)

He confirmed that there were 3 hot boxes being used in the cafeteria but he did not know who initially purchased the hot boxes. (pg29)  He did not know if those hot boxes existed when Morrison first took over the hospital cafeteria in 2010 (29)  The hot boxes were powered with electricity, each box had its own power chord. (30) They were plugged into the shelving immediately below the hot boxes. (pg 30) He testified that during his tenure, from June 2010 until June of 2014, the hot boxes were plugged into the same outlets under the shelves. (pg 31) Each box had a 3 foot chord that ran from the box to the outlet(35)  He confirmed the accident location when shown photograph marked exhibit 5. (49-50)  He conceded that the sign on the shelf which reads "keep it organized" was placed there by Defendant Morrison. (pg 50)

Prior to plaintiff's accident, Mr. Testeverde admitted that he noticed the electrical cord would run along the floor.  However, all Mr. Testeverde did to remedy the hazardous condition would be to "they get tucked in and there is constant reminding as far as safety". (57:23-25-58:2-3) He was not aware of any other efforts to try and correct the problem. (58:8-12) He does not know if Morrison or SIU was responsible for maintaining the hot boxes (61:6-9)

Testimony of Renu Sethi (Defendant Morrison)

Ms Renu Sethi testified that she is employed by Defendant Morrison as director of food and nutritional services. (pg 7) She manages the cafeteria, including directing the employees of both the Hospital and Morrison, as well as manage the day to day operations(pg 9-10) She confirmed Morrison first started managing the cafeteria at Staten Island Hospital around the year 2010. (pg 12)

Morrison employed 23-24 persons at Staten Island hospital. (pg 17) She confirmed that Morrison did oversee the employees of Staten Island Hospital, like the Plaintiff. (pg 17) In total Morrison oversaw over 100 hospital employees. (pg 18)

She confirmed that the steamers involved in plaintiff' incident sat on a shelf and were plugged in somewhere below the shelf. (pg 42) Ms Sethi confirmed that Defendant Morrison's retail managers were responsible for the entire cafeteria. (pg 44) Defendant Morrison was even responsible for protecting against potential hazards in the cafeteria. (pg 45 ln. 2-8)

Ms. Sethi reviewed the contract between Staten Island hospital and Morrison, which assigns responsibility between the parties. (pg 80) A copy of the contract is annexed to Defendant's motion as exhibit "B" Ms Sethi reviewed section 1.4 of the contract which she says "assigns responsibility over cleaning to the hospital or to the –or Morrison". (pg 80:19-21). Included in Morrison's areas of responsibility is the entire cafeteria, including the area of hot plates where plaintiff was working (pg 84:2-13, see also Contract 1.4(b)) Ms. Sethi confirmed that if there was a complaint or problem with the wiring from the steamers, that complaint was go to a Morrison retail manager. (pg 86:15-19)

When describing the hiring process, Mr. Sethi explained that the Hospital does the background checks and they give Morrison choices of potential employees to choose from. (pg 91) Further, Defendant Morrison did have authority to fire employees like the plaintiff, however they needed to go thru the human resource channel of the hospital to do so. (pg 91-92)

Testimony of Non Party Elzbieta Mackiewicz

Ms Mackiewicz was employed as a cook assistant at SIU. (pg 7) Her supervisor was an

6

employee of Defendant Morrison, Mr. Testeverde. (pg 14)  She testified that Defendant Morrison supervised the cafeteria where plaintiff was injured.  (pg 15)   Ms Mackiewicz witnessed the plaintiff trip and fall over the hanging electrical cord. (pg 24-25)   She and other workers complained to Defendant Morrison about the fact that the cords were hanging on the floor and were a tripping hazard. (pg 35:11-16) Defendant Morrison's manager Paul instructed her to "just ignore it" (pg 35 ln 22).

Significantly, she stated that Defendant Morrison at times tried to remedy the condition by putting the cord back on the shelf but she said it would just fall back onto the floor. (pg 36 ln 8-10)

Testimony of Non Party Ramatu Wurie

Ms. Wurie was an employee of Staten Island Hospital, she was a cook in the cafeteria (pg 11) She testified that Defendant Morrison replaced Aramark, the prior cafeteria manager, around the year 2012. (pg 12)   She testified that Defendant Morrison not only supervised the cafeteria, Defendant Morrison even provided training to Staten Island Hospital employees for topics such as food handling. (pg 15)

When describing the steamer location where the plaintiff was injured, she stated that the tables were lined up differently when Aramark was in charge. (pg 26).  When Aramark was supervising the cafeteria, they ran the electrical cord along the side of the table(away from the floor) (pg 26:6-21)  However, when Defendant Morrison took over the cafeteria, they ran the electrical plugs down toward the floor, causing the long wires to be a hazard. (pg 26 ln 6-17).  She complained to Defendant Morrison (Paul Testeverde) about those cords handing onto the floor. (pg 32) She complained only to Mr. Testeverde because he was in charge of that area. (pg 54 ln 10-14)

She was present when the plaintiff fell, she saw his feet near the cords and she noticed the electric cords "strangled" his foot. (pg 31 ln 12-13)   After the Plaintiff's accident, defendant Morrison moved the electrical outlets from the floor onto the shelf so that the electric cords would not run along the floor. (pg 48 ln 7-12)

7

The Contract Between Defendant Morrison and SIU

Defendant Morrison and SIU entered into a written contract which, Defendant Morrison (Renu Sethi) testified, assigned responsibility between Defendant Morrison and SIU. Significantly, Section 1.4(b) of the contract includes a chart which divides the sections of the hospital and the duties of each party for a given section. Notably, the cafeteria section is almost exclusively the responsibility of Defendant Morrison, including the area where plaintiff met with his accident.

Additionally, page 18 of the contract titled "QUALITY ASSURANCE" states that Defendant Morrison will utilize a quality assurance program and one of its "major focuses" will be on Safety.

## LEGAL ARGUMENT

**I.    DEFENDANT MORRISON DID OWE A DUTY TO PLAINTIFF AS DEFEDNANT WAS NOT MERELY AN OUTSIDE CONTRACTOR**

Defendant Morrison's motion for summary judgment is based on Defendant's theory that it did not owe a duty to plaintiff. Defendant Morrison relies on the line of cases stemming from Espinal v. Melville Snow Contractors, Inc., 773 N.E.2d 485 (NY Ct. App 2002). However, it is hornbook law that liability for an injury on property "is generally predicated upon ownership, occupancy, control or special use of the property…" Minott v. City of New York, 230 A.D.2d 719, 720 (2nd Dept 1996).

When determining whether a defendant owes a plaintiff a duty, courts must consider relevant factors "including the reasonable expectations of parties and society generally, the proliferation of claims, the likelihood of unlimited or insurer-like liability, disproportionate risk and reparation allocation, and public policies affecting the expansion or limitation of new channels of liability." Katz v. United Synagogue of Conservative Judaism, 135 A.D.3d 458 at 459, 23 N.Y.S.3d 183 (1st Dept 2016).   The parties' relationship may create a duty when it places the defendant in the best position to protect against the risk of harm to the plaintiff.  Thus, where a defendant exercises a sufficient degree of control over an event, a duty of care may arise.  Id at 184, 185

In the case at bar, although Defendant Morrison did not own the property, Defendant Morrison certainly occupied, controlled and made special use of the property.  Defendant Morrison even had 24 of its own employees working in the hospital.  The cases cited by Defendant which rely on the holding in Espinal, all involve contractors with limited involvement in the location where the accident happened.  See Donna vs. One Source Holdings, Inc., 680 F.Supp.2d 394 (E.D.N.Y. 2010)(where Defendant was a janitorial services contractor whose services were limited to cleaning

restrooms); Santos v. Deanco Serv Inc., 35 N.Y.S.3d 686 (2nd Dept 2016)(Defendant was a snow removal contractor hired by Lowes).

In the case at bar, Defendant Morrison was not hired for a limited purpose (janitorial services) nor was Defendant contracted to work in very limited and specific circumstances (snow removal). In the case at bar, Defendant Morrison was hired by the hospital to manger and supervise the cafeteria, as well as provide food services for the entire hospital and its patients. Defendant Morrison maintains a daily presence with many employees at the hospital. Defendant Morrison even manages the hospital employees (like plaintiff) as well the day to day operations.

Where someone like Defendant Morrison "exercises a sufficient degree of control over an event, a duty of care to plaintiff may arise". Katz v. United, 135 A.D.3d 458 at 460 (1st Dept 2016). For example, in Derezeas v. Glover, 121 A.D.3d 523 (1st Dept 2014) plaintiff pedestrian was injured when a runner participating in defendant's running class ran into the plaintiff. Defendant supervised the running group. The court held that under the circumstances, defendant owed a duty of reasonable care to pedestrians, who were not a part of his group, sharing the road with the class he was supervising. See also Hores v. Sargent, 230 A.D.2d 712 (2nd Dept 1996)(plaintiff participant in bicycle trip organized by Defendant college was struck by truck not owned or operated by Defendant college. The Court held Defendant College "possessed sufficient degree of control over subject event, and thus was under duty to take reasonable precautions for safety of participants, including plaintiff…" Id at 712.)

Clearly Defendant Morrison owed a duty to plaintiff as Defendant directly managed plaintiff, Defendant maintained the location where plaintiff was working and Defendant created the dangerous condition that caused plaintiff's injuries. Accordingly, Defendant's motion for summary judgment must be denied.

10

## II.    DEFENDANT MORRISON LAUNCH AN INSTURMENT OF HARM AND CREATED THE DANGEOROUS CONDITION

Even if the Court were to apply the standards of Espinal v. Melville, 98 N.Y.2d 136 to the case at bar, Defendant Morrison's motion for summary judgment must still be denied as Defendant created the dangerous condition that caused plaintiff's accident.

The Court in Espinal stated that the term "launched" an instrument of harm is the same as creating or exacerbating a dangerous condition and could be used interchangeably.  Id at 142-143. A contractor can be held liable to a third party if it negligently creates a dangerous condition by launching a force or instrument of harm.  Espinal v. Melville, 98 N.Y.2d 136, 141-142.  See also, Dunleavy v. Tuttle, 83 A.D.3d 995 (2nd Dept 2011).

For example, in Dunleavy v. Tuttle, *supra*, plaintiff tenant was exiting his leased home while workers work doing repairs to the roof when he tripped and fell over a metal bracket on the floor.  Plaintiff sued the multiple defendants including the contractor.  Defendant contractor moved for summary judgment relying on Espinal, claiming he did not owe a duty to plaintiff.  The Court held that "the contractor failed to make a prima facie showing that it did not create a dangerous condition".  Id at 996.  Notably, the depositions raised questions regarding whether the bracket was on the roof before the contractor performed his work and whether the contractor's workers were working on that portion of roof.

Similarly, in Mosca v. OCE Holding Inc., 71 A.D.3d 1103 (2nd Dept 2010) plaintiff was injured when she tripped on a rail that extended out of a photocopier.  Plaintiff sued the company that provided the repair services.  Defendant moved for summary judgment claiming it owed no duty to plaintiff.  The court denied defendant's motion noting "[h]ere, in moving for summary judgment, the defendant failed to establish, prima facie, that it did not create or exacerbate a dangerous condition so as to have launched a force or instrumentality of harm".  Id at 1104.

Likewise, in Petry v. Hudson Valley Pavement, Inc., 78 A.D.3d 1145 (2nd Dept 2010), plaintiff pedestrian tripped and fell over a nail that was in the asphalt and she sued the subcontractor

that did work in the parking lot.  Subcontractor Defendant Hudson's motion was denied because although they did establish that they owed no direct duty to plaintiff, Defendant failed to establish that they did not create or exacerbate the condition.  See also Harris v. Lanai House Inc, 111 A.D.3d 603 (2nd Dept 2013)(whether the snow removal contractor's efforts "created or exacerbated a dangerous condition and, thus, launched a force or instrument of harm, is a question of fact for a jury")

In the case at bar, there is ample evidence that Defendant Morrison created the dangerous condition that caused Plaintiff's accident.  Nonparty witness Wurie testified that Defendant Morrison rearranged the electoral wiring in 2012 in such a manner that the wires created a dangerous and hazardous condition.  Ms. Wurie complained to Defendant Morrison about this condition but they failed to remedy same.  Ms Mackicwicz also testified that Defendant Morrison was aware of the condition and rather than repair it, they would sloppily just try to put the cord on a shelf where it would just fall off over and over again.

The cases relied by Defendant Morrison are easily distinguishable. For example in Donna vs. One Source Holdings, Inc., 680 F.Supp.2d 394 (E.D.N.Y. 2010), a case relied on by defendant Morrison, the court specifically noted that a defendant who "undertakes to render services and then negligently creates or exacerbates a dangerous condition maybe liable for any resulting injury." Id at 402, quoting Espinal, 746 N.Y.S.2d 120, 773 N.E.2d at 490.  In such cases, "a duty would be owed, for which the contractor could be held liable in tort". See Donna at 402.  The court went on to grant Defendant's motion for summary judgment noting "there is no evidence that OneSource either created (negligently or otherwise) the puddle of water on the floor, or exacerbated it in some way so as to render it more dangerous to the restroom patrons" Id at 403.  Unlike the facts of Donna, in the case at bar there is ample evidence that Defendant Morrison created the dangerous condition.  In the case at bar, Defendant Morrison created the dangerous condition that caused Plaintiff's accident by moving the electrical cord to a location near the floor.  Defendant Morrison was also put on notice of the dangerous condition yet they failed to remedy same.

12

Defendant's reliance on Santos v. Deanco Serv Inc., 35 N.Y.S.3d 686 (2nd Dept 2016) is similarly misplaced. Santos involved a slip and fall on ice where the plaintiff failed to provide the bare essentials of a negligence claim. Plaintiff, an employee of Lowes, was injured when he slipped and fell on ice. Defendant snow removal contractor, relying on Espinal v. Melville Snow Contrs., 98 N.Y.2d 136, moved for summary judgment arguing that it owed no duty to plaintiff. The court noted that when determining if a party launched a force or instrument of harm, "a party's passive omissions might also conceivably create or exacerbate a dangerous condition just as active omissions…" Id at 690.

Regarding the utter lack of evidence in support of the Plaintiff's case, the decision specifically states:

> No evidence was presented as to when the ice first materialized or how long it had been present before the accident. There were no climatological records admitted into evidence regarding the nature of the recent storm, the air temperature prior, during, and after the storm, or potential snowmelt and refreeze. There was no evidence as to when the bullpen was plowed in relation to the time of the plaintiff's accident, and there was no expert testimony regarding the standard of care that may have been violated if , contractual language aside, no salt or sand/salt mixture were applied under the circumstances present. Id at 690

Accordingly, when the Court granted the Defendant's motion, it did so because the Plaintiff failed to link the conduct to the created or exacerbation of the condition. "Even if Deanco breached its contract with Lowe's through the failure to apply salt, the plaintiff offered nothing more than speculation that the failure to perform such a duty created or exacerbated the condition that existed when Deanco's subcontractor commenced its work" Id at 691.

In the case at bar, it is undisputed that electric cord was a dangerous condition which existed for a lengthy period of time and there is witness testimony establishing that Defendant Morrison created the dangerous condition. In the case at bar, it is evident that, at the very least, questions of fact exist as to whether Defendant Morrison created or exacerbated a dangerous condition by the manner in which it allowed the cords to lay on the floor.

13

## III.   DEFENDANT MORRISON'S CONTRACT ENTIRELY DISPLACED STATEN ISLAND HOSPITAL'S RESPONSIBILITIES

In Espinal v. Melville Snow Contrs., 98 N.Y.2d 136, the Court of Appeals held that where the contracting party has entirely displaced the other party's duty to maintain the premises safely, the Defendant can be held liable in tort. Id at 140.

In the case at bar, at the very least there are questions of fact raised by the contract entered into between Defendant Morrison and SIU.  Specifically, section 1.4 of the contract specifies those areas that Defendant Morrison is responsible for maintaining.  The cafeteria area, including the line and line equipment where plaintiff had his accident, are solely the responsibly of Defendant Morrison.  (See exhibit "B" to Defendant Morrison April 6, 2017 request).

The contract also specifies that Defendant Morrison must make safety a "major focus" of Defendant Morrison's quality assurance plan.

Defendant Morrison's obligations were also confirmed by Defendant Morrison's director, Renu Sethi.  Ms Sethi testified that pursuant to the contract, her retail managers were responsible for the food area and steam tables. (pg 44)  Defendant Morrison was also responsible for protecting against potential hazards. (pg 45 ln. 2-8)  She reviewed portions of the contract between the hospital and Morrison, which assigns responsibility between the parties.  (pg 80)  She confirms that Defendant Morrison was responsible for the area of hot plates where plaintiff was working (pg 84) In fact, she confirmed that if there was a complaint or problem with the wiring from the steamers, that complaint was go to a Morrison retail manager. (pg 86)

In line with the foregoing, Defendant Morrison's motion must be denied as the contract they entered into entirely displaced the hospitals duty to maintain the location of plaintiff's accident.

14

## CONCLUSION

In line with the foregoing, it is evident that Defendant Morrison owed Plaintiff, as well as all other occupants of the Cafeteria, a duty and Defendant Morrison breached that duty when it allowed a dangerous condition exist which Defendant Morrison itself created.  It is undisputed that Defendant Morrison had notice of the dangers condition.

Accordingly, Defendant's motion for summary judgment should be denied.


DATED:      STATEN ISLAND, NY
            June 30, 2017

                                        _____
                                        Glen Devora, Esq.
                                        Jonathan D'Agostino & Associates, P.C.
                                        3309 Richmond Avenue
                                        Staten Island, NY  10312

15