UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
DUNG NGUYEN and NGOC-ANH VU,

                              Plaintiffs,            Case No.:  1:16-cv-01351

        -Against-

MORRISON HEALTHCARE

                              Defendant
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X


### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT


William E. Vita, Esq.
WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, NY 11556
Telephone:  516-622-9200
Facsimile:  516-622-9212
wvita@westermanllp.com

Anthony R. Martinez (Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone:  816-474-6550
Facsimile:  816-421-5547
amartinez@shb.com

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ......................................................................................................... ii

INTRODUCTION ........................................................................................................................1

FACTUAL HISTORY ..................................................................................................................1

PROCEDURAL HISTORY...........................................................................................................3

LEGAL ARGUMENT..................................................................................................................4

    I.       STANDARD OF REVIEW ..............................................................................4

    II.     ARGUMENT..................................................................................................5

          A.    Morrison is entitled to summary judgment because an alleged failure to perform a contract obligation does not give rise to a tort duty in favor of Plaintiff. ...................................................................5

          B.    None of the *Espinal* exceptions applies in this case. ...................................6

               1.    Morrison did not launch a force or instrument of harm...................6

               2.    Plaintiff did not detrimentally rely on Morrison's contract with the Hospital. ..............................................................................10

               3.    Morrison did not entirely displace the Hospital and wholly absorb its duty to maintain the premises safely. ............................11

          C.    Plaintiff Ngoc-Anh Vu's derivative loss of consortium claim fails because the underlying claims likewise fail...............................................14

CONCLUSION..........................................................................................................................14

# TABLE OF AUTHORITIES

FEDERAL CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ........................................................5

*Beckman v. U.S. Postal Serv.*, 79 F. Supp. 2d 394 (S.D.N.Y. 2000) ..............................10

*Castro v. County of Nassau*,
    739 F. Supp. 2d 153 (E.D.N.Y. 2010) ........................................................................5

*Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) ............5

*Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394 (E.D.N.Y. 2010) ...........5, 7, 8, 10, 12

*Glassman-Blanco v. Delta Airlines*, No. 13-cv-4287 (E.D.N.Y. 2016) ..........................4

*Jones v. United States*, 720 F.Supp. 355 (S.D.N.Y. 1989) ...........................................14

*Nolen v. Goord*, 218 F. App'x 41 (2d Cir. 2007) ............................................................4

*Rodriguez v. I.C. Sys., Inc.*, 14-CV-06558 (E.D.N.Y. 2016) ..........................................4

STATE CASES

*Altinma v. East 72nd Garage Corp.*, 54 A.D.3d 978, 865 N.Y.S.2d 109 ........................9

*Bono v. Halben's Tire City, Inc.*, 84 A.D.3d 1137, 924 N.Y.S.2d 497 ............................9

*Braverman v. Bendiner & Schlesinaer. Inc.*, 990 N.Y.S.2d 605 (2d Dep't, 2014) ........9

*Church v. Callanan Indus.*, 99 N.Y.2d 104, 752 N.Y.S.2d 254, 782 N.E.2d 50 ..............9

*Corrales v. Reckson Assoc. Realty Corp.*, 868 N.Y.S.2d 2, 55 A.d.3d 469 (1st
    Dep't 2008) ...............................................................................................................11

*Decanio v. Principal Bldg. Serv. Inc.*, 983 N.Y.S. 2d 2, 115 A.D.3d 579 (1st Dep't
    2014) .........................................................................................................................10

*Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093 (N.Y. 1990) .........5, 6

*Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485 (N.Y. 2002)..5, 6, 7, 8, 10, 11, 12, 13

*Foster v. Herbert Slepoy Corp.*, 905 N.Y.S.2d 226, 76 A.D.3d 210 (2d Dep't
    2010) .........................................................................................................................6

*Gartmann v. City of New York*, 890 N.Y.S.2d 5, 67 A.D.3d 468 (1st Dep't 2009) ........10

*George v. Marshalls of MA, Inc.*, 878 N.Y.S.2d 143, 61 A.D.3d 925 (2d Dep't 2009) ........................................................................................................................13

*H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896 (N.Y. 1928) ...........................6, 9

*Hagen v. Gilman Mgmt. Corp.*, 770 N.Y.S.2d 890, 4 A.D.3d 330 (2d Dep't 2004) ...................12

*Moore v. Ewing,* 781 N.Y.S.2d 51, 9 A.D.3d 484 (2004) ...........................................14

*Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189 (N.Y. 1994) ..........................6

*Parrinello v. Walt Whitman Mall, LLC*, 30 N.Y.S.3d 692, 139 A.D.3d (2d Dep't 2016) ........................................................................................................................11

*Rahim v. Sottile Sec. Co.*, 817 N.Y.S 2d 33, 32 A.D.3d 77 (1st Dep't 2006) ..............................11

*Santos v. Deanco Serv., Inc.*, 35 N.Y.S. 3d 686, 142 A.D.3d 137 (2d Dep't 2016) ........................8

**FEDERAL RULES**

Fed. R. Civ. P. 56(c) ..............................................................................................5

Fed. R. Civ. P. 56(e) ..............................................................................................5

**STATE RULES**

Local Civil Rule 56.1 ..........................................................................................3, 4

Local Civil Rule 56.1(b) ..........................................................................................4

## INTRODUCTION

Plaintiff Dung Huu Nguyen[1] contends that he tripped and fell on an electrical cord while working as a cook for Staten Island University Hospital ("Hospital"). He alleges that the cord originated from warming tables on the kitchen serving line. Plaintiff applied for and continues to receive worker's compensation benefits from his employer, the Hospital. Defendant Morrison Management Specialists, Inc., incorrectly sued herein as Morrison Healthcare ("Morrison"), entered into a contract with the Hospital to provide limited food services at the Hospital.

Plaintiff contends that Morrison was negligent in placing and/or allowing the electrical cord to remain in a position where it posed a hazard that led to his fall. These claims are legally deficient because Morrison did not owe him a tort duty. New York law has long held that the failure to properly perform a contract obligation does not give rise to a tort duty to non-contracting third parties like Plaintiff. Because Morrison's duty to provide limited food services arises solely from Morrison's commercial contract with the Hospital, and because Plaintiff cannot establish any exception to this broad rule, Morrison is entitled judgment as a matter of law.

## FACTUAL HISTORY

This case arises out of the claim that 64-year-old Plaintiff was injured on June 26, 2014, while working as a cook at the Hospital. More than four years prior to Plaintiff's accident, Morrison entered into written agreement with the Hospital ("Contract") to manage, supervise, and train the Hospital's food service employees in the Hospital's kitchen. The Contract only required Morrison to provide "management personnel," but not service employees such as

---

[1] Although Dung Nguyen and his wife, Ngoc-Anh Vu, both assert claims in this case, Morrison's references to "Plaintiff" in this Motion shall be to the party that suffered the direct injury, Dung Nguyen.

Plaintiff. (Fact 5; Contract at 1.2(b)). Indeed, pursuant to the Contract, the Hospital provided all hourly personnel:

> [A]ll hourly personnel of the Program and the Department who work at the Facility (the "Hourly Personnel") will be carried as part of the Hospital's payroll, and all expenses in connection with the Hourly Personnel shall be paid by the Hospital.

(Facts 5-9; Contract at 1.2, Renu Sethi Depo. Transcript, at 91:6-92:12). Morrison was also required to follow all applicable Hospital policies and procedures and to comply with Hospital training requirements. (Fact 10; Contact at 1.2(c-d)).

The Contract makes clear that Morrison did not own or control the kitchen real property or the food service equipment, including the warming tables that allegedly caused Plaintiff's accident. If Morrison ever had to purchase any equipment, it had to bill the Hospital and the Hospital would retain title to the equipment. (Facts 11-12; Contract at 1.4; Renu Sethi Depo. at 37:17-25). The Hospital was contractually obligated to maintain the kitchen and ensure it was "equipped and furnished:"

> The Hospital will ensure that the Facility (including the kitchen) is in good, clean, sanitary, working condition, as of the beginning of Morrison's Services. The Hospital will maintain the Facility and all items furnished by the Hospital (the "Property") in accordance with Applicable Law, and make all repairs or replacements to the Facility and Property at its expense, except that Morrison shall be responsible for damage to the same caused by the gross negligence of Morrison's employees.

(Fact 11; Contract at 1.4).

Morrison's representative confirmed the lack of control Morrison had over many aspects of the Hospital's food service operation, including hiring employees and buying equipment. She testified the Hospital recruited the employees, performed background and reference checks, and then allowed Morrison to choose from a couple of people. (Facts 6-8; Renu Sethi Depo., at 91:6-17). Further, the Hospital actually hired the employees and performed all payroll functions.

- 2 -

(Id.)  Morrison did not have the ability to fire a cook like Plaintiff.  (Fact 8, Renu Sethi Depo., at 91:23-92:12).   Morrison could make disciplinary recommendations to the Hospital's human resources department, and the Hospital would usually impose progressive disciplinary steps before terminating a Hospital cook like Plaintiff.  (Id.).  Even then, it was the Hospital's ultimate decision to fire a cook, not Morrison's.  (Id.)

Regarding the warming tables at issue, the Contract provides, and Morrison's representative confirmed, that Morrison did not own those pieces of equipment and did not determine where they were placed.  (Facts 12-14; Renu Sethi Depo. at 37:17-25, 93:2-94:2). Those rights and responsibilities remained with the Hospital.  (Id.).  Further, the warming tables could not be physically moved or re-positioned without involving the Hospital engineering department, which would have had to relocate electrical outlets.  (Id.).  Moreover, the Contract again makes clear that the Hospital, not Morrison, shall "make all repairs or replacements to the Facility and Property at its expense."  (Fact 11; Contract at 1.4).

## PROCEDURAL HISTORY

On March 16, 2017, this Court entered a Scheduling Order requiring any party intending to file a Motion for Summary Judgment to file a Rule 56.1 Statement no later than April 6, 2017, and any non-movant opposing such summary judgment motion to file a responsive Rule 56.1 Statement no later than April 27, 2017.   Morrison complied with Local Rule 56.1 and this Court's Scheduling Order by submitting its Rule 56.1 Statement on April 6, 2017.  Plaintiff, however, failed to comply with the Order and did not submit a Rule 56.1 Statement.

On April 28, 2017, the Court entered a new Scheduling Order, noting Plaintiff's non-compliance and warning Plaintiff that failure to submit a Rule 56.1 Statement on or before May 1, 2017, would result in Morrison's facts deemed admitted:  "Unless Plaintiffs are admitting to the facts set forth in Defendant's Rule 56.1 Statement, Plaintiffs are instructed to file an

opposing Rule 56.1 Statement in strict compliance with the Court's Individual Rules and Practices, with exhibits, by May 1, 2017. No further extensions will be granted." Plaintiffs submitted an opposition on April 28, 2017, but wholly failed to comply with Rule 56.1 by not including a separate statement of facts. On May 16, 2017, the Court cancelled the scheduled May 23, 2017, pre-motion conference and set a briefing schedule for Morrison's Summary Judgment Motion.

Here, despite a clear warning and a generous extension, Plaintiffs have failed to submit a separate statement of disputed facts, in plain violation of Rule 56.1. This Court's April 18, 2017, Order made clear that if Plaintiffs fail "to oppose the facts set forth in a movant's Rule 56.1 Statement, the facts stated therein are deemed admitted." The facts set forth in Morrison's Rule 56.1 Statement, therefore, should be deemed admitted. *See Nolen v. Goord*, 218 F. App'x 41, 43 (2d Cir. 2007); *Glassman-Blanco v. Delta Airlines*, No. 13-cv-4287 (KAM) (SMG) (E.D.N.Y. 2016) (deeming admitted the facts set forth in the movant's 56.1 statement due to the non-movant's failure to file a statement in opposition and noting that, "the court specifically reminded the parties in its Minute Entry following the pre motion conference dated November 21, 2014, of the need to follow Local Rule 56.1."); *Rodriguez v. I.C. Sys., Inc.* 14-CV-06558 (KAM) (JO) (E.D.N.Y. 2016) at fn. 1 (After the plaintiff failed to submit a counter 56.1 statement pursuant to Local Civil Rule 56.1(b) in opposition to the defendant's motion for summary judgment, "the court deems admitted the facts set forth in defendant's 56.1 Statement.").

## LEGAL ARGUMENT

### I.    STANDARD OF REVIEW

Summary judgment is warranted "if no genuine issue of material fact remains to be decided and the undisputed facts warrant judgment for the defendants as a matter of law."

*Doona v. OneSource Holdings, Inc.*, 680 F. Supp. 2d 394, 399 (E.D.N.Y. 2010) (citing Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). A "material fact" is one "that might affect the outcome of the suit under the governing law."" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323. Once the moving party meets its burden making a prima facie showing that there are no genuine issues of material fact, the nonmoving party may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); see also *Anderson*, 477 U.S. at 248. A non-movant must present concrete evidence and rely on more than conclusory or speculative claims. *See Castro v. County of* Nassau, 739 F. Supp. 2d 153, 165 (E.D.N.Y. 2010). The nonmoving party may not rely merely on conclusory allegations or denials, but must set forth "concrete particulars" that show that a trial is necessary. *Id.*

## II.    ARGUMENT

### A.    Morrison is entitled to summary judgment because an alleged failure to perform a contract obligation does not give rise to a tort duty in favor of Plaintiff.

The alleged failure to properly perform a contract obligation generally does not give rise to tort liability in favor of a non-contracting third-party. *Espinal v. Melville Snow Contractors, Inc.*, 773 N.E.2d 485, 487 (N.Y. 2002); *Eaves Brooks Costume Co. v. Y.B.H. Realty Corp.*, 556 N.E.2d 1093 (N.Y. 1990). There are three narrow exceptions to this broad rule: (1) "where the contracting party, in failing to exercise reasonable care in the performance of his duties, 'launches a force or instrument of harm'; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Espinal*, 773 N.E.2d at

488; *Palka v. Servicemaster Mgmt. Servs. Corp.*, 634 N.E.2d 189 (N.Y. 1994) (discussing total displacement); *Eaves Brooks*, 556 N.E.2d at 1096 (discussing detrimental reliance); *H.R. Moch Co. v. Rensselaer Water Co.*, 159 N.E. 896 (N.Y. 1928) (discussing launch of force or harm)).

It is undisputed in this case that Morrison's duties to manage food services at the Hospital arose exclusively from a contract. (Fact 2; Contract). It is equally undisputed that Plaintiff is not a party to the Contract. (Id.). Because Plaintiff does not allege facts in his Complaint to support the application of any of the three *Espinal* exceptions, Morrison has established its prima facie entitlement to summary judgment. *Foster v. Herbert Slepoy Corp.*, 905 N.Y.S.2d 226, 76 A.D.3d 210, 214 (2d Dep't 2010) (ruling that the moving defendant was "not required to negate the possible applicability of any of the three exceptions set forth in [*Espinal*] and its progeny as part of [its] prima facie showing, [where] the plaintiff never alleged facts in her complaint or in her bill of particulars which would establish that any of those exceptions applied herein.").

## B.    None of the *Espinal* exceptions applies in this case.

Morrison did not own, lease or otherwise exclusively control the kitchen or the equipment located therein. (Facts 11-12; Contract at 1.4, Renu Sethi Depo., at 37:17-25). The limited duties Morrison owed in this context were strictly contractual. (Fact 2; Contract). Because Plaintiff was not a party to that contract and none of the three narrow *Espinal* exceptions applies here, Morrison is entitled to judgment as a matter of law.

### 1.    Morrison did not launch a force or instrument of harm.

In its letter opposition the pre-motion conference, Plaintiff's first argument was that Morrison actually placed the cord on the floor in the first place and thereby created the allegedly dangerous condition. The undisputed facts, however, flatly refute argument. First, the evidence reveals that Morrison did not own the premises, the warming tables or the electrical cord that allegedly caused his fall. (Facts 11-12; Contact at 1.4, Renu Sethi Depo., at 37:17-25). Second,

Morrison did not install, modify or move the warming tables at any time. (Facts 11-14; Contact at 1.4, Renu Sethi Depo., at 37:17-25, 93:2-94:2). Third, the Contract gave the Hospital exclusive responsibility to maintain and repair all equipment in the kitchen, including the warming tables. (Fact 11; Contract at 1.4) Fourth, Morrison had no physical way of moving the warming tables because it would have required the Hospital engineering department to move electrical outlets to accommodate such a move. (Facts 13-14; Renu Sethi Depo., at 93:2-94:2). There simply is no admissible evidence to show that Morrison created the hazard in the first place or undertook some affirmative act to exacerbate the condition.

Plaintiff's second argument in his letter opposition to the pre-motion conference was that Hospital kitchen employees had warned Morrison of the danger posed by the electrical cord and that Morrison ignored the warnings and did nothing to remedy the condition. A mere omission to perform a contractual duty, however, does not constitute the launching of a force or instrument of harm. *Espinal* involved a slip-and-fall accident in an icy parking lot and a claim that a contractor should have eliminated the hazard before the accident. A defendant who negligently creates or exacerbates a dangerous condition while rendering contracted-for services may be liable for any resulting injury. *Espinal*, 773 N.E.2d at 489. But the mere failure to perform a task under a contract, without more, is not sufficient to meet the first exception of *Espinal*. *Id.*

In *Doona vs. OneSource Holdings, Inc.*, 680 F.Supp.2d 394 (E.D.N.Y. 2010), American Airlines contracted with OneSource to provide janitorial services at John F. Kennedy Airport. *Id.* at 398. The plaintiff, who worked for American Airlines at the airport, slipped and fell on a puddle of water in a bathroom. *Id.* He sued OneSource, alleging that it owed him a tort duty to find and clean up the spill prior to his fall. *Id.* Applying *Espinal* and its progeny, the court held that OneSource owed him no such tort duty. *Id.* at 402. Specifically addressing the argument

- 7 -

that One Source's failure to clean up the spill constituted the launching of a force or instrument of harm, the court found that "courts have fleshed out the vagaries of this language by emphasizing that this test is met when a defendant creates or exacerbates a harmful condition." *Id.* OneSource did not owe a duty to the plaintiff because there was no evidence that "OneSource either created (negligently or otherwise) the puddle of water on the floor, or exacerbated it in some way so as to render it more dangerous to the restroom patrons." *Id.* at 403.

The Second Department, in *Santos v. Deanco Serv., Inc.*, 35 N.Y.S. 3d 686, 142 A.D.3d 137 (2d Dep't 2016), found that the mere failure to do something, i.e. move an electrical cord, did not constitute a launch of a force or instrument of harm. The court rejected the plaintiff's argument and entered summary judgment for the contractor:

> To suggest, as does the plaintiff, that a mere omission by a contractor, without more evidence, may constitute a launch of a force or instrument of harm, decimates the meaning of the first *Espinal* exception. In other words, the first Espinal exception would be limitless, triggered upon any breached contract, and have the practical effect of entirely abrogating the general rule that contractors owe no duty to plaintiffs with whom they are not in contractual privity. Without requiring, in the context of the first *Espinal* exception, proof that the contractor's conduct created or exacerbated the icy condition, any breach of contract could always be conflated with tort liability, even though breach of contract and tort liability are two separate concepts. In our view, for the jury's verdict to be rational, there needs to be evidence in the record that BTN's failure to salt at the bullpen created the icy condition on which the plaintiff fell, or exacerbated it.

*Id.* at 142.

Even if Morrison had some legal or physical ability to move the warming tables and their electrical cords after their original placement, the failure to do so - a mere omission to perform a contract obligation - would not equate to the launching of a force or instrument of harm:

> [T]the courts have distinguished between situations where a "putative wrongdoer has advanced to such a point as to have launched a force or instrument of harm" and those in which such a party has merely "stopped where inaction is at most a

refusal to become an instrument for good" (*H.R. Moch Co. v. Rensselaer Water Co.*, 247 N.Y. 160, 167, 168, 159 N.E. 896 (the defendant could not be held liable in tort because its "negligent omission" constituted only "the denial of a benefit," not the launching of a force of harm (id. at 169, 159 N.E. 896)); *see Church v. Callanan Indus.*, 99 N.Y.2d 104, 112, 752 N.Y.S.2d 254, 782 N.E.2d 50 ("failure to install additional length of guiderail did nothing more than neglect to make the highway ... safer"); *see also Bono v. Halben's Tire City, Inc.*, 84 A.D.3d 1137, 1139, 924 N.Y.S.2d 497 (defendant automobile repair shop's failure to warn a party that his vehicle brakes could fail if he did not replace the master cylinder on his car did not constitute the launching of a force or instrument of harm); *Altinma v. East 72nd Garage Corp.*, 54 A.D.3d 978, 980, 865 N.Y.S.2d 109 (a defendant's alleged negligent failure to warn the decedent's employers regarding man-lift or elevator inspection requirements amounted to 'a finding that [the defendant] merely may have failed to become 'an instrument for good,' which [was] insufficient to impose a duty of care").

*Braverman v. Bendiner & Schlesinaer. Inc.*, 990 N.Y.S.2d 605 (2d Dep't, 2014). "In other words, liability will not be imposed where a party's conduct is at most the denial of a benefit." *Id.* (citations omitted).

Morrison's duties in the Hospital kitchen were purely contractual. Even if Morrison was warned about the dangers of the electrical cord and did nothing to remedy the issue, the mere failure to perform a contractual obligation, without an affirmative act to create or exacerbate the condition, does not and cannot constitute a launching of a force or instrument of harm.

In short, there are no facts showing that Morrison's affirmative conduct created or exacerbated the alleged dangerous condition on which Plaintiff tripped and fell. The Hospital owned the kitchen and the electrical cord in question and agreed contractually to "maintain the Facility and all items furnished by the Hospital (the "Property") in accordance with Applicable Law, and make all repairs or replacements to the Facility and Property at its expense." (Fact 11; Contract at 1.4). Morrison did not install or place the cord on the floor and took no affirmative step to exacerbate the condition. And any "failure" or omission by Morrison to remedy the

- 9 -

situation thereafter does not and cannot constitute a launching of a force or instrument of harm. Based on the undisputed material facts, the first *Espinal* exception does not apply here.

**2.    Plaintiff did not detrimentally rely on Morrison's contract with the Hospital.**

Plaintiff cannot prove that he detrimentally relied on the Contract between Morrison and the Hospital because he did not set forth that allegation in the pleadings. *Decanio v. Principal Bldg. Serv. Inc.*, 983 N.Y.S. 2d 2, 115 A.D.3d 579, 580 (1st Dep't 2014) (holding that the plaintiff cannot "assert that she detrimentally relied upon PBS's or CCPC's continued performance of snow-removal services, as she did not set forth that allegation in the pleadings."); *see also Gartmann v. City of New York,* 890 N.Y.S.2d 5, 67 A.D.3d 468, 468–469 (1st Dep't 2009); *Beckman v. U.S. Postal Serv.,* 79 F. Supp. 2d 394, 407 (S.D.N.Y. 2000) ("Although a complaint need not correctly plead every legal theory supporting the claim, at the very least, plaintiff must set forth facts that will allow each party to tailor its discovery to prepare an appropriate defense.").

Further, if even Plaintiff had plead detrimental reliance, he admitted that he has never seen the Contract, so he cannot rely on a contract he has never seen.  (Fact 3; Dung Nguyen Depo. at 79:20-24). *See Doona*, 680 F. Supp. 2d at 403 (rejecting the application of the second *Espinal* exception because a "plaintiff must have knowledge of the underlying contract, and there is nothing to suggest that Mr. Doona was aware of OneSource's contract with American or that somehow OneSource induced the plaintiff's reliance on the continued performance of its contractual duties"). Moreover, the Contract itself places full responsibility on the Hospital, not Morrison, to "maintain the Facility and all items furnished by the Hospital (the "Property") in accordance with Applicable Law, and make all repairs or replacements to the Facility and Property at its expense." (Fact 11, Contract at 1.4).  As such, even if Plaintiff had relied on a

- 10 -

provision in the Contract to have the kitchen equipment properly maintained, any reliance on Morrison to do so would be unjustified. Plaintiff simply could not have detrimentally relied on Morrison's continued performance of its Contract duties as a matter of law. The second *Espinal* exception does not apply.

### 3. Morrison did not entirely displace the Hospital and wholly absorb its duty to maintain the premises safely.

Plaintiff does not allege in his Complaint that Morrison entirely displaced the Hospital's duty to maintain a safe premise. Thus, Morrison has met its prima facie showing of entitlement to judgment on the third *Espinal* factor by establishing that Plaintiff was not a party to the contract between Morrison and the Hospital. *See Parrinello v. Walt Whitman Mall, LLC*, 30 N.Y.S.3d 692, 139 A.D.3d, 687-88 (2d Dep't 2016) (holding that "Inasmuch as the plaintiff did not allege facts that would establish the possible applicability of the second or third exception, [defendant] was not required to affirmatively demonstrate that these exceptions did not apply in order to establish its prima facie entitlement to judgment as a matter of law.").

Moreover, the undisputed facts show that Morrison did not entirely displace the Hospital's duty to maintain the premises safely. Such displacement requires that the contract be a "comprehensive and exclusive" property management contract. *Espinal*, 773 N.E.2d at 488. The contractor must "entirely absorb" the other party's duty to maintain safe conditions on the property. *Rahim v. Sottile Sec. Co.*, 817 N.Y.S 2d 33, 32 A.D.3d 77, 81 (1st Dep't 2006). Further, it is not possible for a contract such as the one between Morrison and the Hospital to be "comprehensive and exclusive" where the Hospital retained responsibility for and control over maintenance of the premises. *Corrales v. Reckson Assoc. Realty Corp.*, 868 N.Y.S.2d 2, 55 A.d.3d 469, 470 (1st Dep't 2008) (holding that contractor's housekeeping contract was not comprehensive and exclusive because the "on-site property manager retained responsibility for

- 11 -

and control over maintenance"); *Hagen v. Gilman Mgmt. Corp.*, 770 N.Y.S.2d 890, 4 A.D.3d 330, 331 (2d Dep't 2004) (granting summary judgment to contract property manager "where owner reserved to itself a significant amount of control over the maintenance of the premises.").

*Doona* is helpful in this analysis. There, the court also addressed the third *Espinal* exception and rejected the argument that OneSource's janitorial contract was so comprehensive as to absorb American Airlines' duty to maintain its premises safely: "Even if the premises are narrowed to just include the restrooms, American retained responsibility for the maintenance and repair of plumbing in the restrooms. As such, it cannot be said that the agreement was comprehensive or exclusive, or that One-Source, in providing janitorial services, wholly absorbed American's responsibility to safely maintain its premises." *Doona*, F. Supp. 2d at 403.

Here, the clear language of the Contract demonstrates that Morrison did not entirely displace the Hospital's duties to maintain a safe premises because the Contract specifically required the Hospital to "ensure that the Facility is in good, clean, sanitary, working condition …" (Fact 11, Contact at 1.4). It also required the Hospital to "maintain the Facility and all items furnished by the Hospital in accordance with Applicable law, and make all repairs or replacements …" (Id.). The Hospital employed all kitchen service employees such as Plaintiff. (Facts 5-9; Contract at 1.2, Renu Sethi Depo. Transcript, at 91:6-92:12). Morrison provided personnel for the limited purpose of managing the food service operation. (Id.).

The Hospital retained the sole power to fire and hire the food service employees and could even remove the Morrison supervisors. (Id.). Morrison was obligated to follow all applicable Hospital policies and procedures and comply with the Hospital's training requirements. (Fact 10; Contract at 1.2(c-d)). Thus, the Hospital had the ultimate responsibility to keep its own premises safe through its own equipment, employees and its ultimate power

- 12 -

under the Contract to hire, fire and control the food services at the property. *See George v. Marshalls of MA, Inc.*, 878 N.Y.S.2d 143, 61 A.D.3d 925, 928 (2d Dep't 2009) (holding that housekeeping contract "was not a comprehensive and exclusive property maintenance obligation" intended to displace the landowner's duty to safely maintain its premises where the landowner continued to employ its own staff).

In addition to sharing the food service responsibilities with Morrison, the Hospital retained ultimate responsibility for the safety of its premises in other respects, including its own maintenance and engineering personnel. (Facts 11-14; Contract at 1.4, Renu Sethi Depo. at 37:17-25, 93:2-94:2). The Hospital's maintenance and engineering department was exclusively responsible for any electrical work, including any possible relocation of the electrical outlets. (Id.). Further, the Hospital, not Morrison, owned the equipment that allegedly caused Plaintiff's fall and was exclusively responsible for the maintenance, repair and replacement of that equipment. (Id.). Last, the Hospital bore all the risks associated with costs and losses in connection with the operation of the food and nutrition department, "including but not limited to payroll costs, Morrison's fees and charges, and all food, labor, supply and other standard costs." (Fact 15; Contract at 2.2(c)). This proves that the Hospital retained substantial responsibility for and control over the area in which the fall occurred.

Morrison's limited food services Contract was far from "comprehensive and exclusive," and Morrison did not even come close to entirely displacing the Hospital and wholly absorbing its duty to provide a safe premise. Based on the undisputed facts, the third *Espinal* exception does not apply as a matter of law.

- 13 -

**C.**  **Plaintiff Ngoc-Anh Vu's derivative loss of consortium claim fails because the underlying claims likewise fail.**

A claim for loss of consortium is derivative of the related personal injury claim and dismissal of the personal injury claim warrants dismissal of any dependent consortium. *See, e.g., Moore v. Ewing,* 781 N.Y.S.2d 51, 9 A.D.3d 484 (2004); *Jones v. United States,* 720 F.Supp. 355, 369 (S.D.N.Y. 1989).  Thus, since Plaintiff's claim fails, his wife's claim must be dismissed.

## CONCLUSION

Morrison owed Plaintiff no contractual duty that could support the tort claims he brings here.  Because Morrison did not affirmatively create or exacerbate the hazard in question, it did not launch of a force or instrument of harm in this situation.  Plaintiff did not detrimentally rely on the Contract between Morrison and the Hospital.  And Morrison did not come close to completely displacing the Hospital such that it entirely absorbed the Hospital's duty to maintain a safe premises.  For these reasons, Morrison respectfully requests that this Court enter judgment for Morrison as a matter of law.

Dated: Uniondale, New York
          June 2, 2017

Respectfully submitted,

By: _____

William E. Vita, Esq.
WESTERMAN BALL EDERER MILLER
ZUCKER & SHARFSTEIN, LLP
1201 RXR Plaza
Uniondale, NY 11556
Telephone: 516-622-9200
Facsimile:  516-622-9212
wvita@westermanllp.com

Anthony R, Martinez (Admitted *Pro Hac Vice*)
SHOOK, HARDY & BACON L.L.P.
2555 Grand Boulevard
Kansas City, MO 64108-2613
Telephone: 816-474.6550
Facsimile:  816-421-5547
amartinez@shb.com

*Attorneys for Defendant*
*Morrison Management Specialists, Inc.*