UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
DUNG NGUYEN and NGOC-ANH VU,

                                       **MEMORANDUM OF**
                                       **DECISION AND ORDER**

           Plaintiffs,

                                       16-cv-1351 (LDH)(PK)

      -against-

MORRISON HEALTHCARE,

           Defendant.
-------------------------------------------------------------x
LaSHANN DeARCY HALL, United States District Judge:

      Plaintiff Dung Nguyen brings this action against Defendant Morrison Healthcare ("Morrison") alleging a claim for negligence related to a trip and fall. (Compl., ECF No. 1-1.) Plaintiff Ngoc-Anh Vu brings a claim for loss of society, services, and consortium. (*Id.*) Defendant moves pursuant to Federal Rule of Civil Procedure 56 for summary judgment as to both claims.

## UNDISPUTED FACTS[1]

      On January 1, 2010, Defendant Morrison entered into an agreement with Staten Island University Hospital (the "Hospital") to "exclusively provide the Services for the Hospital's food

---

[1] The foregoing facts are undisputed unless otherwise noted. Moreover, the facts in Defendant's Rule 56.1 Statement are deemed admitted because Plaintiffs failed to file a timely Rule 56.1 Statement in opposition. *Jones-Khan v. Westbury Bd. of Educ.-Westbury Union Free Sch. Dist.*, No. 13-cv-7144, 2017 WL 1483522, at *2 (E.D.N.Y. Apr. 25, 2017) (declining to exercise the court's discretion to consider plaintiff's counterstatement "in light of [p]laintiff's failure to timely file her Counterstatement or request an extension of time"). On March 16, 2017, the Court issued a scheduling order directing any party intending to file a dispositive motion to file a pre-motion letter and Rule 56.1 Statement, with exhibits, by April 6, 2017, and directing the non-movant to file either a response opposing the pre-motion letter, accompanied by a Rule 56.1 Statement and exhibits, or a letter advising the Court that it did not intend to oppose the motion by April 27, 2017. (Scheduling Order, Mar. 16, 2017.) On April 6, 2017, Defendant filed a pre-motion letter regarding its anticipated motion for summary judgment, accompanied by a Rule 56.1 Statement and exhibits. (Pre-Mot. Conf. Ltr., ECF No. 15.) On April 26, 2017, Plaintiffs filed a letter in response to Defendant's pre-motion letter, accompanied by only exhibits and no responsive Rule 56.1 Statement. (Pls.' Resp. Pre-Mot Conf. Ltr., ECF No. 16.) Because Plaintiffs' pre-motion submission did not comply with the

1

services program . . . and Food and Nutrition Services Department" with Morrison "provid[ing] the Services on the Hospital's behalf as the Hospital's agent" (the "Agreement"). (Def.'s 56.1 Statement ¶ 2, ECF No. 20-3; Def.'s Ex. B ¶ 1.1(a), ECF No. 20-5.) The term "Services" is defined under the Agreement as "the supervision of the food services at the Facility and catered events, as exclusively provided to Hospital by Morrison under this Agreement . . . ." (Def.'s Ex. B ¶ 10.7.) Under the Agreement, Morrison was obligated to provide management personnel for the Hospital's food and nutrition department. (Def.'s Ex. B ¶ 1.2(a).) In addition to management personnel, the Agreement called for hourly personnel, which the Hospital, as opposed to Morrison, had the sole authority to hire, employ, and terminate. (Def.'s 56.1 Statement ¶¶ 5-8.) Specifically, with regard to hourly personnel, the Agreement provided:

> [A]ll hourly personnel of the Program and the Department who work at the Facility (the "Hourly Personnel") will be carried as part of the Hospital's payroll, and all expenses in connection with the Hourly Personnel shall be paid by the Hospital. The Hospital shall be responsible for all costs related to the Hourly Personnel, including all wages and associated payroll costs such as payroll taxes, insurance and fringe benefits.

---

Court's March 16, 2017 order, the Court entered an order on April 28, 2017 stating: "Unless Plaintiffs are admitting to the facts set forth in Defendant's Rule 56.1 Statement, Plaintiffs are instructed to file an opposing Rule 56.1 Statement in strict compliance with the Court's Individual Rules and Practices, with exhibits, by May 1, 2017. No further extensions will be granted." (Scheduling Order, Apr. 28, 2017.) Plaintiffs again failed to comply with the Court's order, and did not submit an opposing Rule 56.1 Statement until June 30, 2017, when they filed their opposition to Defendant's summary judgment motion. (Pls.' Rule 56.1 Statement, ECF No. 18.) The Court rejects Plaintiffs' late filing, and Plaintiffs "ha[ve], in effect, failed to file the requisite Local Civil Rule 56.1 Statement in opposition." *Gadsden v. Jones Lang Lasalle Americas, Inc.*, 210 F. Supp. 2d 430, 438 (S.D.N.Y. 2002) (deeming the facts in defendant's Rule 56.1 Statement admitted after rejecting plaintiff's untimely Rule 56.1 Statement); *see also* Local Civil Rule 56.1(c) (providing that "[e]ach numbered paragraph in the statement of material facts set forth in the statement required to be served by the moving party will be deemed to be admitted for purposes of the motion unless specifically controverted by a correspondingly numbered paragraph in the statement required to be served by the opposing party"). Accordingly, the facts in Defendant's Rule 56.1 Statement are deemed admitted. *Jones-Khan*, 2017 WL 1483522, at *2 (deeming the facts in defendant's Rule 56.1 Statement admitted where plaintiff filed a late counterstatement); *Black v. USA Travel Auth. Inc.*, No. 99-cv-11278, 2001 WL 761070, at *2 (S.D.N.Y. July 6, 2001) ("Plaintiff failed to respond in a timely manner to defendants' summary judgment motions, despite the fact that this Court granted two requests for extensions of time. Thereafter . . . this Court rejected [plaintiff's] late opposition to defendants' motions for summary judgment and deemed admitted the facts set forth in defendants' Local Civil Rule 56.1 Statements."). This ruling, however, "does not absolve the party seeking summary judgment of the burden of showing that it is entitled to judgment as a matter of law, and a Local Rule 56.1 statement is not itself a vehicle for making factual assertions that are otherwise unsupported in the record." *Giannullo v. City of New York*, 322 F.3d 139, 140 (2d Cir. 2003).

(Def.'s Ex. B ¶ 1.2(b).) Consistent with this provision, the Hospital recruited all food services employees, performed background checks, hired the food services employees, and managed all payroll functions. (*Id*. ¶¶ 6-7.) Morrison did not have the authority to fire hourly personnel. (*Id*. ¶ 8.)

With regard to Morrison management personnel, the Hospital could request the removal of any individual and, under the Agreement's terms, Morrison was required to comply with the request "provided such request [wa]s lawful, reasonably justified in writing, and Morrison [wa]s first given an opportunity to respond and address such issues consistent with th[e] Agreement." (*Id*. ¶ 9.; Def.'s Ex. B ¶ 1.2(a).) Morrison was required to follow all applicable Hospital policies and procedures and comply with Hospital training requirements. (*Id*. ¶ 10.)

The Hospital was responsible for both supplying the facility Morrison used to provide its services and for ensuring that the facility was "equipped and furnished." (Def.'s Ex. B ¶ 1.4(a).) Specifically, the Agreement provided:

> The Hospital will ensure that the Facility (including the kitchen) is in good, clean, sanitary, working condition, as of the beginning of Morrison's Services. The Hospital will maintain the Facility and all items furnished by the Hospital (the "Property") in accordance with Applicable Law, and make all repairs or replacements to the Facility and Property at its expense, except that Morrison shall be responsible for damage to the same caused by the gross negligence of Morrison's employees.

(*Id.*) The Hospital also bore the risks associated with costs and losses connected to the operation of the food and nutrition department, "including but not limited to payroll costs, Morrison's fees and charges, and all food, labor, supply and other standard costs." (*Id*. at ¶ 2.2(c).)

Plaintiff Nguyen was employed by the Hospital as an hourly cafeteria worker. (Def.'s 56.1 Statement ¶¶ 1, 4; Def.'s Ex. A at 9:11-24, ECF No. 20-4.) On June 26, 2014, Plaintiff

Nguyen was injured at work when he tripped over an electrical wire routed from three warming tables. (Def.'s 56.1 Statement ¶ 4; Def.'s Ex. A at 37:11-38:16.) At the time of his injury, Plaintiff Nguyen was not aware of the contract between Morrison and the Hospital. (Def.'s 56.1 Statement ¶ 3.)

Morrison did not own the food service equipment, including the warming tables that allegedly caused Plaintiff Nguyen's trip and fall. (*Id.* ¶ 12.) Morrison could not move the warming tables, as such removal would have required the Hospital's engineers to relocate the electrical panels, which Morrison lacked authority or ability to do. (*Id.* ¶ 13.) As such, it fell to the Hospital to remove the warming tables. (*Id.* ¶ 14.)

## STANDARD OF REVIEW

Summary judgment must be granted when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *accord Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. At summary judgment, the movant bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Feingold v. New York*, 366 F.3d 138, 148 (2d Cir. 2004). Where the non-movants bear the burden of proof at trial, the movant's initial burden at summary judgment can be met by pointing to a lack of evidence supporting the non-movants' claim. *Celotex Corp.*, 477 U.S. at 325.

Once the movant meets that burden, the non-movants may defeat summary judgment only by producing evidence of specific facts that raise a genuine issue for trial. *See* Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 248; *Davis v. New York*, 316 F.3d 93, 100 (2d Cir. 2002). The

court is to view all such facts in the light most favorable to the non-movants, drawing all reasonable inferences in his or her favor. *Anderson*, 477 U.S. at 255. To survive summary judgment, the non-movants must present concrete evidence and rely on more than conclusory or speculative claims. *Quinn v. Syracuse Model Neighborhood Corp.*, 613 F.2d 438, 445 (2d Cir. 1980) ("The litigant opposing summary judgment . . . 'may not rest upon mere conclusory allegations or denials' as a vehicle for obtaining a trial.").

## DISCUSSION

### I. Negligence

To prevail on a negligence claim under New York law,[2] a plaintiff must establish: "(1) the existence of a duty on defendant's part as to plaintiff; (2) a breach of this duty; and (3) injury to the plaintiff as a result thereof." *Alfaro v. Wal-Mart Stores, Inc.*, 210 F.3d 111, 114 (2d Cir. 2000) (quoting *Akins v. Glens Falls City Sch. Dist.*, 53 N.Y.2d 325, 333 (1981)). "The existence of a duty is thus a *sine qua non* of a negligence claim: In the absence of a duty, as a matter of law, no liability can ensue." *Id.* (quoting *McCarthy v. Olin Corp.*, 119 F.3d 148, 156 (2d Cir. 1997) (internal quotation marks omitted)). Whether such a duty of care exists and the scope of that duty is a question of law for the court to determine. *Id.*; *see also In re Lake George Tort Claims*, 461 F. App'x 39, 40 (2d Cir. 2012) ("The existence and scope of an alleged tortfeasor's duty is, in the first instance, a legal question for determination by the courts." (quoting *Sanchez v. State of New York*, 99 N.Y.2d 247, 252 (2002)).

Defendant argues as a threshold matter that Plaintiff Nguyen cannot establish a duty because the contract between Defendant and the Hospital did not give rise to a duty of care flowing from Defendant to Plaintiff Nguyen. Plaintiff Nguyen was not an employee of

---

[2] The parties do not dispute that New York substantive law governs this case.

5

Morrison, and Morrison neither owned nor leased the kitchen or the equipment located in the kitchen, where Plaintiff was injured. (Def.'s 56.1 Statement ¶¶ 1, 4, 11-12.) Therefore, to the extent any duty of care was owed by Defendant, such a duty would have to stem from Defendant's contract with the Hospital at which Plaintiff Nguyen was employed. *Connolly v. Chemtreat, Inc.*, No. 14-cv-2121, 2016 WL 126379, at *4 (E.D.N.Y. Jan. 11, 2016) (finding that where there was no general duty owed to the plaintiff because he was not an employee or contractor of the defendant and the defendant did not own or operate the place where plaintiff was injured, that any duty owed to the plaintiff must arise from the defendant's contract with the plaintiff's employer or other "special circumstances"); *Gonzalez v. Aramark Food & Support Servs. Grp. Inc.*, No. 09-cv-4843, 2012 WL 1019982, at *4 (E.D.N.Y. Mar. 26, 2012) ("Because Aramark owes no general duty to keep Gonzalez safe from tripping hazards, any duty they may have had arose from Aramark's food services contract with Lutheran.").

Under New York law, "a contractor generally does not owe an independent tort duty of care to a non-contracting third party." *Guzman v. Wackenhut Corp.*, 394 F. App'x 801, 803 (2d Cir. 2010) (summary order) (citing *Espinal v. Melville Snow Contractors Inc.*, 98 N.Y.2d 136, 138-139 (2002). However, as established in *Espinal v. Melville Snow Contractors Inc.*, there are three exceptions under which a duty of care to a non-contracting third party may arise out of a contractual obligation: "(1) where the contracting party, in failing to exercise reasonable care in the performance of his duties, launches a force or instrument of harm; (2) where the plaintiff detrimentally relies on the continued performance of the contracting party's duties; and (3) where the contracting party has entirely displaced the other party's duty to maintain the premises safely." *Espinal*, 98 N.Y.2d at 140.

### A. Whether Defendant Launched a Force or Instrument of Harm

New York courts analyzing the first *Espinal* exception have interpreted the phrase "launch[ing] a force or instrument of harm" to mean "negligently creat[ing] or exacerbat[ing] a dangerous condition." *Doona v. OneSource Holdings, Inc.*, 680 F.Supp.2d 394, 402 (E.D.N.Y.2010) ("[C]ourts have fleshed out the vagaries of this language by emphasizing that this test is met when a defendant creates or exacerbates a harmful condition." (citing *Espinal*, 98 N.Y.2d at 141-42)). Such a creation or exacerbation of a dangerous condition occurs "where the promisor, while engaged affirmatively in discharging a contractual obligation, creates an unreasonable risk of harm to others, or increases that risk." *Church ex rel. Smith v. Callanan Indus., Inc.*, 99 N.Y.2d 104, 111 (2002).

Defendant argues that there is no evidence demonstrating that Defendant either created the hazard of placing the wire on the floor, or took some affirmative act to exacerbate the condition. (Def.'s Mem. at 9-10, ECF No. 20-2.) Indeed, it is undisputed that Defendant did not own the premises where the accident occurred or the warming tables that allegedly caused Plaintiff Nguyen's fall. (Def.'s 56.1 Statement ¶ 12; Def.'s Ex. B ¶ 1.4(a); Def.'s Ex. D at 37:17-25.) Additionally, the Agreement required the Hospital to provide the facility to Defendant, to ensure that the facility was "equipped and furnished," to "maintain the Facility and all items furnished by the Hospital," and to "make all repairs or replacements to the Facility and Property." (Def.'s Ex. B ¶ 1.4(a).) There is also evidence that Defendant was required to obtain the Hospital's permission in order to move the warming tables because the Hospital's engineering department would have had to relocate the electrical system. (Def.'s 56.1 Statement ¶ 14; Def.'s Ex. D at 93:7-94:2.)

Fatal to Plaintiff Nguyen's claim, Plaintiffs failed to point to any evidence that Defendant created or exacerbated the dangerous condition. At most, Plaintiffs argue that Defendant "rearranged the elect[rical] wiring in 2012 in such a manner that the wires [to the warming tables] created a dangerous and hazardous condition." (Pls.' Mem. at 12, ECF No. 19.) However, there is no evidence in the record that is properly before the Court to support this contention. Rather, because Plaintiffs have admitted Defendant's undisputed statement of facts and supporting evidence, the record demonstrates that the Hospital's engineering department was required to relocate any electrical systems. (Def.'s 56.1 Statement ¶¶ 13-14; Def.'s Ex. D at 93:7-94:2.) Even if the Court were to credit Plaintiffs' argument and the cited testimony, the alleged rearrangement of the electrical wiring occurred in 2012—two years before Plaintiff Nguyen's alleged accident.

Plaintiffs also argue that Defendant was aware of the dangerous condition, but failed to remedy it. (Pls.' Mem. at 12.) Of particular significance here, an alleged omission or inaction is insufficient to find that a defendant launched an instrument of harm "where inaction is at most a refusal to become an instrument for good." *Church*, 99 N.Y.2d at 112; *see also Prendergast v. Hobart Corp.*, No. 04-cv-5134, 2010 WL 3199699, at *8 (E.D.N.Y. Aug. 12, 2010) (rejecting the plaintiff's argument that the defendant launched a force or instrument of harm where the defendant's failure to replace the long hose to a washing machine or disconnect the machine "consisted of withholding a benefit"); *Braverman v. Bendiner & Schlesinger. Inc.*, 121 A.D.3d 353, 360-61 (2d Dep't, 2014) (holding that a mere omission or the failure to make something safer is not a launching of a force or instrument of harm). Accordingly, Defendant's inaction does not establish that Defendant launched an instrument or force of harm.

Further, while the parties do not dispute that Defendant was obligated to clean the area at issue, Plaintiffs have offered no evidence of Defendant's negligence in executing that task. That is, the fact that Defendant was responsible for cleaning the area, without more, is insufficient to create a reasonable inference that Defendant created or exacerbated the dangerous condition. Even viewing the evidence in the light most favorable to Plaintiff—as the Court must do— Plaintiffs have failed to raise a triable issue of fact as to whether Defendant launched a force or instrument of harm. *Dickerson v. Napolitano*, 604 F.3d 732, 740 (2d Cir. 2010) (noting that on summary judgment "we construe all evidence in the light most favorable to the nonmoving party, drawing all inferences and resolving all ambiguities in its favor").

On the basis of the evidence in the record before the Court, it cannot be said that Defendant Morrison launched a force or instrument of harm so as to create a duty running from Defendant to Plaintiff Nguyen.

**B. Whether Plaintiff Nguyen Detrimentally Relied on the Continued Performance of Defendant's Duties**

Defendant further argues that Plaintiff Nguyen cannot establish a duty under the second *Espinal* exception, which creates a duty of care where a plaintiff detrimentally relied on the defendant's continued performance of its contractual duties. *Espinal*, 98 N.Y.2d at 140. Plaintiffs have not advanced any arguments in opposition. In any event, the Court agrees with Defendant that the second *Espinal* exception is inapplicable here.

It is well settled that detrimental reliance as contemplated in the second *Espinal* exception requires that the plaintiff have knowledge of the underlying contract. *Doona*, 680 F. Supp. 2d at 402-03 ("[I]nducing the plaintiff's detrimental reliance on the defendant's continued performance of its contractual obligations, generally requires that the plaintiff have knowledge of the contract, and that in the case of inaction, the inaction results in working an injury."); *O'Keefe*

*v. Arbon Equip. Corp.*, 399 F. Supp. 2d 478, 485 (S.D.N.Y. 2005) ("[A] plaintiff must have knowledge of the contract in order to state a valid claim of detrimental reliance."); *Occhino v. Citigroup Inc.*, No. 03-cv-5259, 2005 WL 2076588, at *7 (E.D.N.Y. Aug. 26, 2005) ("Where there is no evidence that a plaintiff had any knowledge of a snow removal contract and plaintiff relies solely on his own observations of the surrounding conditions at the time of his accident, a plaintiff has failed to make a valid claim of detrimental reliance."). Plaintiff Nguyen concedes that he did not know about, and never saw, the Agreement between Defendant and the Hospital. (Def.'s Ex. A at 79:20-24.) Accordingly, Plaintiffs have failed to raise an issue of fact concerning detrimental reliance on Defendant Morrison's continued performance of its contractual obligations.

### C. Whether Defendant Entirely Displaced the Hospital's Duty to Maintain the Premises Safely

Under the third *Espinal* exception, a contract gives rise to a duty of care to a third party when, pursuant to the agreement, the contracting party assumes the other party's duty to safely maintain the premises. *Espinal*, 98 N.Y.2d at 140; *Gonzalez*, 2012 WL 1019982, at *6 ("[A] duty exists when, as a result of a contract, one party fully assumes the other's responsibilities in a specific, articulable sphere to a reasonably predictable, identifiable class of individuals."). This exception applies where the contract is "comprehensive and exclusive," making the contracting party "the sole privatized provider for a safe and clean . . . premises" and displacing the other party's duty to maintain the premises. *Espinal*, 98 N.Y.2d at 140. In assessing this exception, courts look to the agreement itself to determine whether it is sufficiently comprehensive to create a duty flowing from the contracting party to a third party. *See Santorelli v. Crothall Servs. Grp., Inc.*, No. 15-cv-978, 2017 WL 728227, at *9 (E.D.N.Y. Feb. 23, 2017) (noting that courts look to the services agreement when determining whether this exception applies).

Here, Defendant has established that it did not entirely displace the Hospital's duty to maintain a safe premises. The Court need look no further than Paragraph 1.4 of the Agreement to reach this conclusion. Although Defendant was obligated to supervise the food services and facility, under Paragraph 1.4 of the Agreement, the Hospital provided the facility "equipped and furnished." (Def.'s Ex. B, ¶ 1.4(a).) Further, the Hospital arguably retained some obligations with regard to safety of the area as it was responsible for "maintain[ing] the Facility and all items furnished by the Hospital . . .and [for] mak[ing] all repairs or replacements to the Facility and Property at its expense," as well as for handling "[g]arbage/trash removal" and "[m]ajor equipment replacement [of] $500 or more." (*Id*. at ¶¶ 1.3(a), 1.4(a).) Under these terms, it cannot be said that Defendant Morrison entirely displaced the Hospital's duty to maintain a safe premises.

In their opposition, Plaintiffs contend that Defendant was "responsible for protecting against potential hazards," was "responsible for the area of hot plates where [P]laintiff was working," and would receive any "complaint or problem with the wiring from the steamers." (Pls.' Mem. at 14.) Notably, Plaintiffs cite to no evidence that is properly before the Court to support this claim. And, even if the Court were to accept it as true, this purported evidence is insufficient to establish that Defendant fully assumed the Hospital's role. At most, it suggests, as does the Agreement, that this role was shared.[3] *See Connolly*, 2016 WL 126379, at *7 (finding defendant did not displace Covanta's duties where defendant was required to provide a "complete service-oriented water treatment program," and Covanta "retained the remaining

---

[3] Plaintiff also argues that Defendant agreed to make safety a "major focus" of its quality assurance program. (Pls.' Mem. at 14.) However, having safety as a "major focus" of a program does not establish that Defendant entirely displaced the Hospital's duty to maintain a safe premises. *See e.g., Connolly*, 2016 WL 126379, at *7 (finding that the "safety provisions in the Agreement were ancillary to [the defendant's] effectuating a chemical treatment program" and the contracting party "retained the remaining responsibility to safely maintain the water cooling tower"). Further, many of Morrison's programs, including associate trainings, were subject to the Hospital's approval. (Def.'s Ex. B. at Internal Ex. B.)

11

responsibility to safely maintain the water cooling tower, in particular with respect to the operation, equipment maintenance, and equipment repair and disposal); *DeAngelis v. Am. Airlines, Inc.*, No. 06-cv-1967, 2010 WL 1292349, at *4 (E.D.N.Y. Mar. 31, 2010) (finding, in a slip-and-fall case, that the contracting defendant's "cleaning responsibilities were neither comprehensive nor exclusive such that they displaced American Airlines' maintenance obligations" where the defendant's "responsibilities were limited to providing janitorial services" and American Airlines remained "responsible for all maintenance and repairs of all the operating systems within the terminal"); *Doona*, 680 F. Supp. 2d at 403 (finding that defendant, in contracting to provide janitorial services, did not entirely displace American Airlines' duty to safely maintain its premises, where "[e]ven if . . .narrowed to just include the restrooms, American Airlines retained responsibility for the maintenance and repair of plumbing in the restrooms"); *but see Gonzalez*, 2012 WL 1019982, at *7 (finding that contracting party owed a duty to the third party where there was evidence that the defendant "fully supplanted [the hospital's] food services department"; "developed detailed food services procedures and implemented them on-site, every day"; "was responsible for training, managing, and assigning all food services personnel"; and "was in the best position to prevent hazards arising from food services equipment like Burlodge Carts").

## II. Loss of Consortium

Defendant does not raise an independent basis to dismiss Plaintiff Vu's loss of consortium claim[4] on summary judgment. Defendant argues only that the loss of consortium claim rises and falls with the negligence claim. (Def.'s Mem. at 14.) Indeed, a loss of

---

[4] "The concept of consortium includes not only loss of support of services, it also embraces such elements as love, companionship, affection, society, sexual relations, solace and more." *Hassanein v. Avianca Airlines*, 872 F. Supp. 1183, 1190 (E.D.N.Y. 1995) (quoting *Delosovic v. City of New York*, 143 Misc.2d 801, 810 (N.Y.Sup.Ct.1989)).

consortium claim is a derivative claim that is dependent upon the viability of the primary cause of action. *See Reed v. Medford Fire Dep't, Inc.*, 806 F. Supp. 2d 594, 606 (E.D.N.Y. 2011). Because Defendant is entitled to summary judgment on Plaintiff Nguyen's negligence claim, Plaintiff Vu's derivative cause of action for loss of consortium must be dismissed as well. *See Vega-Santana v. Nat'l R.R. Passenger Corp.*, 956 F. Supp. 2d 556, 562 (S.D.N.Y. 2013) (dismissing derivative claim for loss of consortium because "[w]here the primary cause of action is dismissed on summary judgment, the loss of consortium claim must be dismissed as well").

## CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is granted. The Clerk of Court is respectfully directed to enter judgment and close this case.

SO ORDERED:

/s/ LDH
LaSHANN DeARCY HALL
United States District Judge

Dated: Brooklyn, New York
      March 29, 2018